The next case in for argument is David Ryan Tejera v. United States of America. This appeal presents three issues related to Section 3664N which requires applying substantial resources received by an inmate during incarceration to restitution, that is, owed. Two of the issues relate to how to interpret the statute, and the third relates to whether the government met its evidentiary burden under it. The first interpretation issue is, what does owed mean? The plain language of that word reaches only the defendant's current obligation to pay under the restitution order. In fact, that was so obvious that the government actually conceded that point in the Fourth Amendment decree. And if there were any doubt about it, then the rule of lenity would come into play and Mr. Tejera, as a defendant, would get the benefit of that rule. Here, the district court's schedule... Let me ask you, Dr. Gessa. It seemed plain to me, but it seems to suggest going the other way. The whole point of the statute is to make the victim whole. So under your interpretation of what remains to be owed, can the government ever reach a state windfall that's deposited into an inmate account? If so, how would they do that? Go back to court? Well, I think... So I think that what... As the court interprets Subsection N, it's really interpreting the scheme as a whole. And the scheme has several parts. The first part, and we've discussed this, Section F2, where the court, at sentencing, creates, looks at the circumstances at that time and says, I'm creating this schedule based on what I think the defendant can pay. There is another provision, Subsection K, that says that when there is a change in material circumstances, the court can go back and change the schedule. It can occur in immediate payment, it can occur in one-time payment, or it can actually change the schedule from, let's say, $25 a quarter to $100 a quarter. So that's... That's my question. So basically, the way that the government gets the windfall, if somebody receives a settlement of $100,000, the government would have to go back to court to amend the order under your interpretation? Well, if they want to collect anything beyond what is immediately paid and oweable, yes. And I think that the fact that Subsection K exists supports our interpretation of Subsection N, which is K is when you want to go back to the court and change what the defendant is obligated to pay. N is the defendant is already obligated to pay this. He gets a bunch of money while he's in prison, so we want to grab that to pay what is owed. And so I think that's a very significant limit that comes into play in Subsection N through the word owed, because obviously Congress could have chosen a much different language if it said, you know, they could have said full amount of restitution. They could have said any obligation, but they use the word owed, and I think that has to mean something. But then the second interpretation question is what do substantial resources mean? Now, it's undisputed that it requires a sudden financial injection as opposed to the gradual accumulation of money over time, such as with wages. But there's no precedent on what substantial means, so that's something the court will have to consider. And I think with statutory interpretation issues, we start, as always, with the plain meaning. The government doesn't dispute the dictionary definition of substantial as considerable in amount, value, or worth. And it also doesn't dispute the interpretation of substantiality in objective or subjective testing. In other words, do you look at the person's individual circumstances or what's substantial to the average person? I'm trying to figure out whether there's some fine-fining in there that would be better suited for the district court to interpret in the first instance. What I propose in the brief is a definition of substantial, and it's somewhat fuzzy, but it's based on, because remember, this is going to have to be applied to defendants across the board, not just one defendant. So rather than doing a very cumbersome procedure looking at each defendant, what's substantial for each defendant, I think it makes more sense, and I think it's more logically consistent with Congress's intent when they use the word substantial instead of any resources, is that it has to meet some sort of threshold. Is it worth all the effort to go and get the money? Because, again, there is a very definite procedure in place for issuing a restitution order. It sometimes requires a lot of upfront work by a judge to look at the financial situation and set the payment schedule. If we're going to go back after that and ask for a change, it should have to be a significant amount, and I think the court can leave for another day what the exact number is, because I think $800 or even the full $1,400 of the check isn't worth what it would take for government resources, for the government to put together a proper motion for a defense counsel to properly investigate and respond and for a district court to thoughtfully review it. Wherever the line is, we're talking about multiple thousands of dollars, not $800 or a full check. Well, both the circuit and the unpublished decision of POTH suggested it has to be an individualized case-specific analysis to determine what a substantial resource is for a particular defendant. I think in POTH, they said you have to do at minimum some comparison to the defendant's financial obligations as determined by the court in the original restitution order, rather than just an abstract definition of substantial. Are you disagreeing with that analysis? Yeah, and for clarification, that's the first decision in POTH, not the second decision in POTH. I can't remember which one, but I think it's the first one, and I think they offer, you know, they go through the dictionary definition of substantial, and then they say that we have to interpret the term substantial in the context of the statutory scheme as a whole, and they say at the least, they suggest to us that substantial means something in comparison relative to the defendant's financial obligations. I do disagree with that because, one, even looking at that, I don't really understand what it means, because that's some of the analysis that's done up front by the district court of sentencing, so I don't fully understand what that provision meant with regard to what is done differently when there's a new influx of funds. I will point out that it's like, obviously this court doesn't treat its unclosed dispositions as precedent anyway, but this is a case where there was actually the first PLUF decision that came out the night... No one's suggesting that it's precedential. The question is whether it's a persuasive interpretation. Right. I don't think it's persuasive, because I think that even when the case was vacated by the district court and went back, they didn't restate that part when they issued a new decision. For whatever reason, they abandoned that. So while it may have been written in an opinion one time, even that panel ultimately had some reason for not including it in their final decision. But I think that, going back to what I said initially, I think that that also creates a much more cumbersome procedure in the future to the extent that, you know, the government's going to go in and try to get this kind of money, because then it becomes this whole financial audit of what the inmate's entire financial situation is at that time, a more objective standard about what is substantial at a threshold level before the government should even think about filing a motion. It would be a much better use of government resources. Dory, you wanted to save some time. Thank you. May it please the court, Assistant United States Attorney Richard Park, on behalf of the appellee and the government. Your Honor, before I jump into responding to appellant's arguments, I want to lay the groundwork for what we're actually talking about here. What we're talking about is a transfer of COVID stimulus funds from an inmate's account for an inmate who owes restitution to the victims of his crime. Mr. Laughlin talked about the statutory scheme and talked about 3664-K. 3664-K, which he says the government should have applied to reach Mr. Tahara's funds, can't be used here because 3664-K requires Mr. Tahara to have provided notice of a material change in his financial circumstance. As Your Honors might anticipate, Mr. Tahara never provided such notice to the government that he did enjoy a material change in circumstances. Wait, wait. It doesn't just require the defendant, right? I think counsel's point is that there is a mechanism that provided in the statute for notification to the court. No one is saying that if defendant receives a big windfall, some portion of that can't be ordered to be returned to the victim. The question is really processed. And K basically says the court may also accept notification of a material change in the defendant's economic circumstances from the United States or from the victim. So there's two ways to go here. One is to interpret it the way the government advances in your brief. Full restitution doesn't mean that it's limited to the monthly schedule set by the court, and so therefore make an application, you get the money. What counsel's saying is that there is a process through K where the government can notify the court. I don't know that that's maybe a distinction without a difference because the government comes in by way of motion anyway, but that's counsel's interpretation. I don't read K as being limited to just the defendant. Well, just to respond quickly to that, 3664K does say a restitution order shall provide that defendant shall notify the court and the attorney general of any material change in defendant's economic circumstance. Right, and the next sentence says? Upon receipt of the notification, the court may on its own motion or motion. No, the next sentence says the court may also accept notification of a material change in defendant's economic circumstances from the United States or from the victim. Then basically the court, upon that notification, on its own or motion of the party, can adjust the payment schedule. So that's what he's arguing. He's like, there's a process here, and the government needs to comply with that process. And I'll respond to it this way. I think we have to first start with 3613C, which indicates that when a restitution order is entered, the government has a lane on all of defendant's property and rights to property. So in other words, the defendant's property from the moment that restitution order is entered can move against the defendant's property. Now, respecting what the sentencing court does with the payment schedule and whether it's immediately due, that is the general kind of foundational basis. And now we have 3664K and 3664N. 3664N is actually even more on point and is a statute that should be followed here because Mr. Terra is an inmate who is serving his time in incarceration. He owes restitution, and he enjoyed a receipt of substantial resources to make payments on that restitution. So although counsel may have disagreements on whether K could apply here, and there have been motions for these turnovers of inmate funds that do rely on K, it's really 3664N that's appropriate. So let's talk about subsection N because I think there was a lean theory floating around out there. It's not well-developed, and so I think N just provides a much clearer vehicle in this case. If we go under N, isn't there a tracing problem in this case in terms of tracing of the source? I'm talking about cases like proof for the Eighth Circuit, cases like Evans and Robinson's. How do you deal with the tracing issue in this case? The government came in, and the way that it's presented here is that there's a pot of money here as of X date, right? It's $1,200 or whatever the amount is, and so therefore, judge, can you authorize that we take $800? But you have access to the inmate account, right? But there's no accounting of what came in, what came out, what the source is, so that there's some verification that this is not coming from, say, prison wages, which is not going to be covered under subsection N. So how do you address that? I address it in the following way. The government did provide a declaration as well as supporting documentation that indicated that Mr. Tarrant did receive a COVID check, COVID stimulus check in May of 2021. Right, but the numbers don't account for what was said. Your declaration doesn't account for what amount was in the account at the time, the numbers, the withdrawals, and the deposits don't add up to... It's not a complete accounting. It's a partial accounting. I'll submit to you that the money that came in in May of 2021, we did accounting subsequent to that point, to the point at which the government retrieved part of the stimulus funds in favor of restitution, and all those assets were liquidated to cash, so the tracing issue in terms of tracing it back is not going to be at issue here. We know that there was $1,400 that was entered to that account, $680 was also entered subsequent to that, and there was a small payment, and a $350 withdrawal. However, because all those assets were cashed and because the time in which the money entered the account and the money left the account was a relatively short amount of time, we were able to establish that, because these are all non-exempt funds, that that money, a portion of which, could be allocated to the payment of restitution. So, because these are non-exempt funds, because it's cash, and because the government was very careful not to touch anything that might remotely resemble prison wages, and in fact, the appellant hasn't argued that any of this was prison wages, which, understanding this Court's decision in Poff, is off limits. It's a question of source, and maybe, I mean, I have to admit up front, I'm terrible at math, but I just don't, I'm not understanding the tracing issue from the government. $1,400 came in in May, mid-May, and then it seemed like money came in and out, including $680 from some other source. I don't know what other sources there are. It's a two-paragraph explanation in the government's declaration, essentially one or two lines in each paragraph, and I'm having trouble mapping it out to figure out where the other sources are, and whether the $800 that the government is seeking is coming out of the $680 from other sources. Well, to start with the original principles, the government has to lean on all of the defendant's assets, for starters. Well, you just acknowledged, though, that sources such as prison wages are not something that can be reached under N. Well, a published decision from this Court did indicate that prison wages shouldn't be considered under 3664N, correct. However, because it's all... And I still don't seem to be arguing that that's wrongly decided. And we don't need to reach that issue today. But because all these assets are cash, as part of an inmate trust account, whether it's there were small, minor infusions and transfers out of the account, that shouldn't be consequential to this Court's decision that money, a substantial resource of which COVID stimulus funds does represent a form of substantial resources, that money should go to the victim's of this crime, not into his inmate trust account. Can you move on to addressing the absence of a statutory definition of substantial? How should we interpret that in this context? So courts have agreed that even money as low as in the $600 range has been substantial. The standard of review on that particular issue is going to be abuse of discretion. So Judge O'Kane, in his consideration of the evidence... Well, the legal interpretation of the term substantial would be legal too, which we reviewed in court. Correct. So far, I don't see an actual interpretation of the term substantial resources. And so the Eighth Circuit, in the published decision, has interpreted that as something requiring a case, a careful, individualized case-specific analysis to determine whether they're substantial with respect to this particular defendant. The Ninth Circuit, in the unpublished decision, also suggested it has to be an individualized determination that there's a suggested abstract substantial, you know, $1,400 seems like a lot of money, therefore it's substantial. And in fact, the $100 of Mrs. Herrera's remaining $6,200 restitution obligation, which, by the way, is to pay for burial expenses,  that is substantial to these victims. I heard Mr. Laughlin said, is it worth the government getting involved in money that's less than, you know, a four-digit, you know, in the thousands area? And I'll submit that it is. Your Honor, if I may just finish that sentence. Yes, I'll submit that it is. And sometimes the restitution amounts owed are large, sometimes they're small. In this case, it's relatively small. But all the statutes, the Crime Victim Rights Statutes, the MVRA, it's all pointing towards full recovery, timely recovery of restitution for victims. And so in this case, we ought not prefer an inmate's entitlement to this COVID stimulus funds, and we should prefer to pay for victims. Thank you, Your Honor. I just wanted to respond to counsel's last point by pointing to the Eighth Circuit's decision in Kidd, which quotes the Supreme Court's recent decision in Lagos, which basically says, a broad general purpose of this kind, meaning restitution to victims, does not always require a center for restitution statute in a way that favors an award. So I just wanted to emphasize that what we're really talking here is about procedures that are in place for when the government can get extra money for the schedule that a district judge thoughtfully put in place at the time of sentencing. Unless the Court has any other questions. Counsel, just to make sure I understand, it was your argument that even if there's an obligation, applicable obligation under N, that the government has to follow the procedure under K to get to the money that it would be entitled to under N? No, my position is that those are completely different things. N is to go after money that is owed. So under owed, under the restitution schedule that has already been imposed. Whereas here, the Court says, I'm not ordering immediate payment of the restitution, I'm ordering the schedule. All that's owed is the money under that schedule here, $25 a quarter. If the government wants more money than that, they need to change the schedule. And changing the schedule is Section K. And I'll say that regardless of the government's reading of K this morning, there's other reasons why it should go after K. There's a whole different set of procedures and a different set of questions about what's the material change that makes it difficult to proceed under K. But that's the appropriate thing if you want to get something beyond the order that's already been made. Does it matter, is it practical? Does it matter in this case? Does it make any practical difference? Whether it's K or it's N, it's not before the Court. They move for some. So, I mean, I suppose if you, under your interpretation, the Court could say, I'm going to order $800 forthwith and keep the schedule the same. I don't want to sound any differently. I want to make clear that I'm not, if, as I said in the brief, I think the government had one bite at the table, the Court should allow them to do anything else. And if they decide to proceed under Subsection K, we are going to be raising arguments about why that isn't a proper procedure for this amount of money in this case. So I don't want to create the impression that I'm conceding they can get the money under K. But what I'm saying is right now the only thing they can get under N is $25 a month per quarter, which he has already paid. So they can't do it under N. We've gotten your argument. Thank you very much. Thank you. That's all for now. The argument is made. The matter is submitted.
judges: NGUYEN, SUNG, Fitzwater